UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

**RECEIVED**
3-9-2009
MAR 9 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CIVILING:
BRUCE GILES ON BEHALF OF
OSCAR SALGADO

-V-

CITY OF CHICAGO, CHICAGO POLICE DEPARTMENT )
MUNICIPAL OF THE CITY OF CHICAGO; FRISBIE )
, WAYNE INDIVIDUAL CAPACITY & OFFICIAL )
CAPACITY FOR VIOLATING COLOR OF STATE LAW )
ACTING AS A CHICAGO POLICE OFFICER. )
POSTELNICK, DAN INDIVIDUAL CAPACITY & )
OFFICIAL CAPACITY FOR VIOLATING COLOR OF )
STATE LAW; PIKE, LAWRENCE INDIVIDUAL CAPACITY )
& OFFICIAL CAPACITY FOR VIOLATING COLOR OF )
STATE LAW; KELENY, ROBERT INDIVIDUAL & OFFICIAL )
CAPACITY FOR VIOLATING COLOR OF STATE LAW; )
MANSOR, MICHAEL INDIVIDUAL CAPACITY & OFFICIAL )
CAPACITY FOR VIOLATING COLOR OF STATE LAW; )
O'CONNOR, DANIEL INDIVIDUAL CAPACITY & OFFICIAL )
CAPACITY FOR VIOLATING COLOR OF STATE LAW; )
JOHNSON, EDWARD INDIVIDUAL CAPACITY & OFFICIAL )
CAPACITY FOR VIOLATING COLOR OF STATE LAW; )
MAYFIELD, MICHEAL INDIVIDUAL CAPACITY & OFFICIAL )
CAPACITY FOR VIOLATING COLOR OF STATE LAW. )

09CV1476
JUDGE DER-YEGHIAYAN
MAG.JUDGE NOLAN

JUDGE:_____

42 U.S.C. 1983, 1985 (2), (3) 1986 18 U.S.C.§241, 242 COUNTERPART ACT.
42 U.S.C. 1983 WRONGFUL DEATH SUIT, GROSS NEGLIGENCE.

<u>STATE OF THE CASE</u>

1.) On the date of 2/10/08 I, Bruce Giles; my beloved cousin, Oscar Salgado and a friend of mine name Julio Lopes were on our way home coming from a friends house. We were proceeding down Wood street toward 43rd street with no problems until we made a stop at 43rd street; we had our signal light going to the left towards Damen street.

2.) We made the left turn after we saw a car that looked like what could have been a light brownish or beige 4 door Chevy, I'm not positively sure of the color because it was dark outside. After the 4 door car passed and we made sure no more cars were coming we made a left turn going west toward Damen street.

3.) Suddenly we noticed the 4 door car make a fast u-turn and started coming behind us at a very high rate of speed. We thought that they might have been trying to do us harm based off prior bad experiences. It was late at night and we decided to take off for our own safety because we felt our lives could have been in danger.

4.) Due to this vicious chase by the unknown, unidentifiable party, we were in fear for our lives in beginning of the pursuit at 43rd and Woods street. Due to this illegal chase by the unmarked car, who engaged in a pursuit, it was the cause of a serious fatal accident that coul have been prevented if they wouldn't have put our lives in fear.

5.) The illegal chase took the life of my beloved cousin, Oscar Salgado, and caused myself Bruce Giles serious injuries that could have taken my life as well as my friend Julio Lopez who suffered serious injuries.

6.) After the car accident the police showed high levels of negligence and brutality by hand cuffing me without knowing whether I was hurt or not. I was seriously hurt, my spinal cord felt like it exploded when the officer threw me with extreme force to the ground and with extreme force put his knee with all his weight on my back.

7.) All of this was done without asking if I was hurt which was apparent looking at the serio -sness of the accident site.

8.) At Mount Sinai Hospital I was diagnosed with substaining very serious injuries by doctors My spinal cord at C-7 spinous process was fractured as well as injuries to my neck. I suffere right shoulder contusions and an open wound to my left leg that felt like my leg was getting cut off.

9.) I never resisted or gave a fight on which the record will show. I also had an open wound on the back of my head that was obvious and showed that I was hurt but all I could hear was," shut up up wet bag!", along with other discriminating and disrespectful remarks.

10.) They also harassed me asking me, " where's your legal resident papers and drugs you wet bag or I'm going to whip your ass back to Mexico?". I kept insisting for help because I was in so much pain and very cold.

11.) I felt like my hands were going to fall off so again I asked the officers," could you please help us and send an ambulance for God sake and stop slamming me to the ground? I'm an American citizen born and raised in Chicago!" All he kept doing is pressing my face to the ground, insisting on retrieving some drugs saying, " I will plant something on you all instead instead of helping you!".

<u>COUNT</u>
MONELL -V- DEPT. OF SOCIAL SERVICES
436 U.S. 658 (1978)

Plantiff states that the City of Chicago a municipality and Chicago Police Department is an instrument of the municipality customs, policy lead to the negligence which constituted a deliberate indifference such as the following:

1.) Gross negligence: The plaintiff contends that the Chicago Police Department violated its own Department Guide Lines in pursuing the vehicle, Chicago Police Department Rule G.O. 97-03 -02 11, A, 3, Police Department Officers Operating Unmarked Department Vehicle will be permitted to engage in a motor pursuit only when the following motor vehicle or its occupants represent an immediate and direct threat to life.

2.) Failure to Train: The plaintiff states the Chicago Police failure to train lead to the incident due to the Department Guide Lines in pursuing the vehicle, Chicago Police Department Rule G.O. 97-03-02 11, A, 3, Police Department Vehicle will be permitted to engage in a motor pursuit only when the feeling motor vehicle or its occupants represent an immediate and direct threat to life.

3.) Failure to Direct: The plaintiff states the defendant called 911 dispatch records which the detective failed to call into the police dispatcher to inform her that the detective chased the plaintiff without legal justification at all. The Chicago Police Department Rule G.O. 97-03-02 11, A, 3, Police Department Officers Operating Unmarked Department Vehicles; this is a failure to direct because the dispatch would have informed the police to stop the chase of plaintiffs, but due to such negligence and the failure to direct caused the wrongful death of my cousin.

### 42 U.S.C. §1983 Wrongful Death

The Plaintiff states detective Johnson Edward acted against Department Guidelines in pursuing the vehicle. Chicago Police Department Rule G.O. 97-03-02 11,A,3, Police Department Officers operating unmarked department vehicle will be permitted to engage in a motor pursuit only when the feeling motor vehicle or its occupants represent an immediate and direct threat to life.

The detective who gave chase acted outside of policies and the gross negligence caused the injuries that I, Bruce Giles, suffered and the wrongful death of Oscar Salgado.

Their was no probable cause to arrest the plaintiffs nor was their an arrest warrant nor search warrant issued by a neutral and detached magistrate Judge, the 911 dispatch report will show that the detectives failed to follow the procedures which are governed under Rule 97-03-02 11, A, 3, Police Department Officers Operating Unmarked Department Vehicles.........

### 42 U.S.C. § 1985 (2) (3) 1986

Due to the police and detectives failure to follow policies, custom, and procedures the police helped assist the detective's in filing a police report and summary complaint, police narrative, which doesn't reflect the incident of the unmarked detectives car causing the Death if Oscar Salgado, the detectives violated rule 97-03-02 11,A,3, Police Department Officer Operating Unmarked Department Vehicle.......

The Chicago Police had knowledge that the detectives chasing the plaintiff caused the plaint-iffs to have crashed the vehicle, never did the detective see the plaintiff violate a traffic ticket or ordinance. The detectives gross negligence caused the wrongful death and the police officers conspiracy with the detectives to write up a false report lead up to the grand jury coming back with the charging of the plaintiff of Aggravated Reckless Homicide. But before the conspiracy plaintiff was charged with DUI and fatal accident, the conspiracy to stop detec-ives from plaintiff, Bruce Giles, from being charged with Aggravated Reckless Homicide when investigating officers had the power to stop the cover up. The reason for the cover up is because officers and the police department was going to be sued for gross negligence........

### 28 U.S.C.§241, §242 COUNTERPART ACT

The plaintiff, Bruce Giles, states that the prosecutor charged the plaintiff for DUI, Fatal Accident due to the Public Defender representing the plaintiff in the case, and has knowledge of the incident, and neglecting to address the issues counsel covered up issues so the plainti fired the public defender. Public Defender was asked to show police reports, police summary , police narrative, summary complaint, and call statement of individuals who went to the Grand Jury but counsel refused to allow plaintiff to review such documents...

The plaintiff counsel refused to give discovery material, stating Supreme Court Rule 415 (b) which gives the public defender the power to assist in denying the pre-trial detainees their discovery. Due to the denial of discovery the plaintiff had to proceed Pro Se.

After the proceeding the state prosecutor requested that the plaintiff, Bruce Giles, be sent to the 10th floor for a psychological evaluation. I believe that this is a tactic used to stop the plantiff from getting the discovery material. Also counsel failure to advocate on behalf of his or her client lead to counsel failure to assist in his defense.

### RELIEF SOUGHT

Plaintiff, Bruce Giles, is seeking injunction relief and declatory relief by asking for the Court to declare the court to declare the defendant actions in dealing with client was unconst -tutional to the effect that the plaintiff sixth amendment right was irreparably injured due t the plaintiff being unable to get a public defender or Pro Bono counsel. Due to the plaintiff Judge refusing to grant new counsel, plaintiff is forced to keep the same attorney.
See: Nelson L. Bryant ET, AL VS Edwin Burnette, et, AL 08; CV6431 seventh circuit appeal no: 1:08-CV-4283

Plaintiff is seeking punitive damages, compensatory damages, gross negligence, and nominal damages. The plaintiff is seeking FIVE MILLION DOLLARS; $5,000,000,000. for wrongful death.

*Bruce Giles*
Respectfully Submitted